Mr. Dent is serving a sentence of 60 years to life after conviction by jury for two counts of second-degree robbery. This is an equitable tolling case. One month after filing, the district court in this case dismissed Mr. Dent's federal habeas petition, which was filed pro se as untimely on preliminary review without requiring responsive briefing and without holding an advent jury hearing. Despite Mr. Dent's request for equitable tolling due to multiple mental illnesses, developmental disabilities, and his inclusion of medical records supporting his claims, his claims of mental impairment due to both mental illness and developmental disability are uncontested and pursuant to Laws v. Lamarck, Porter v. Olison, and Bills v. Clark, he is entitled at a minimum to further development of the record in district court. The district court in this case incorrectly concluded that he was not entitled to equitable tolling because there was no state petition pending during the relevant period, and the district court also erred in concluding that he was not entitled to equitable tolling for his claim that he required the assistance of another inmate to file his first state habeas petition, and the reason was because the limitations period had already expired by that time. Neither of these factors is relevant to an equitable tolling determination. The district court cited to Thorson v. Palmer and Nitto v. Galazzo, which are statutory tolling cases, but tellingly never cited to Laws v. Lamarck, which controls the outcome of this case, and pursuant to which he has made a colorable claim of entitlement to equitable tolling, which mandates further factual development. The district court also never addressed and never discussed his developmental disabilities and how they might have interfered with his ability to timely file. He has a documented IQ of 56. He's been characterized by psychologists as in the, quote, mentally retarded range of intellectual ability. He's unable to count backward from 20, and this court has previously found that such disabilities can form the basis for equitable tolling. In Bills v. Clark, this court focused on that petitioner's inability to read and write, his neurological deficits, borderline to retarded level of intelligence, and we mandate for an evidentiary hearing on how such mental impairments might have interfered. The government in this case, assuming that you're right about the first three years, the government then went into this very elaborate counting exercise with regard to everything that happened thereafter. And, frankly, I couldn't tell whether they were right or wrong about that, but my question to you is, should we be doing that, or should we be asking the district court to do it, or why? Well, the district court, I believe, is in the best position to do that. Given that, I think this case should be remanded based on equitable tolling, but... Equitable tolling, but you have to, do you have to have some equitable tolling for the period after 2003? No. Not just statutory tolling? No. If all the time that his state court, he went through three rounds of post-conviction review, and assuming that all of the time that his petitions were pending is statutorily tolled, that's about, that's close to five years. It's about four years and ten and a half months. And that's assuming that he's entitled to the gap tolling, the interval between the... Okay. But that's what the disputes, at least that's what the government disputed. Right. I mean, they basically said that some of those periods were just too long under our standards. And I gather at some points he said what the reason was, and I don't know if he said it all the time. Right. Well, throughout all of his state court petitions, he explains that he's mentally, he has mental issues. He's got mental illnesses. He attaches medical records. He even, I think for the first, the first gap was maybe four and a half months. He also, in addition, says that he didn't receive the denial of the lower court, the lower court order for four months after it was filed. And he attaches, you know, letters that he, that his in-house, his jail, his jailhouse lawyer, you know, filed on his behalf, and that he asked the librarian to, the prison librarian to call the court. And so he attaches all of those things. With respect to the, there's another interval, I think, nine and a half months between the filing, the denial by the court of appeal and the filing in the California Supreme Court. He also says that he relies on fellow inmates to file these things for him because he doesn't, because of his disabilities and his mental illness. And he said that Lamerle Johnson, who is the person who was doing these writs for him, was separated from him because Mr. Dent was transferred to another prison. And that accounts for, you know, a great deal of time of those nine and a half months. So I think that he does, he does provide adequate justification. And this court actually, I think it was Maxwell, V. Rowe, found that a period of 14-month, a 14-month interval between filings was reasonable because the Petitioner had justified, justified his delay based on, I think in that case it was the complexity of the record. And so his, Mr. Dent's lengthiest interval is about 14 months. So it's not unprecedented in this court. The District Court did not have before it all of the State Court exhaustion papers. It didn't have any papers before it. It had no papers before it. No State Court filings at all. And that was because the Petitioner didn't provide them? That was because it was, the District Court dismissed under Rule 4 and didn't, didn't require the Respondent to lodge any of the State Court filings. And the District Court just merely looked at the website, the California Appellate website, to figure out when Mr. Dent had filed certain petitions. And it appears that he was only aware of Mr. Dent's first round of Federal, I'm sorry, first round of post-conviction review, because he doesn't mention the second or the third rounds. And Mr. Dent went through three rounds. And ordinarily that comes in from the Respondent? Yes, it does. Because it's affirmative defense, that's why? Because the Respondent is in the best position to, I mean, because, because Respondent is in the best position to provide those kinds of papers, because Mr. Dent is acting pro se in District Court. And for the same reason, he doesn't have all of his medical records. And this Court, it was, I believe it was Gatlin v. Tilton, where this Court remanded to the District Court and requested the District Court to get the entirety of the Petitioner's medical records from the Respondent. And in that case, the District Court ultimately found that he was entitled to five years of equitable tolling. And that was a very similar case to this one. Whose burden is that to prove the timeliness? Well, ultimately, in terms of ultimately, it would be the Petitioner's burden to prove that he was entitled to equitable tolling. But at this point, based on this record, it's not adequate to make that kind of determination. I mean, the District Court dismissed as untimely with no State court filings and didn't look into his equitable tolling claims despite his filing all of these papers saying that he's an IQ of 56, he's got post-traumatic stress disorder. He had this litany of medications that he was taking, and he declared that they affected his consciousness, they made him drowsy. And these are supported by the medical records that were filed in the District Court. And even so, the District Court dismissed without requiring any sort of response and did not develop the record properly in order to make a determination on equitable tolling and a statutory tolling as well. I will reserve the rest of my time. Thank you, Kathy. Good morning, Your Honors. May it please the Court. Deputy Attorney General Sarah Farhat on behalf of Respondent. In this case, Your Honors, it took Petitioner nine years from the date his conviction became final in order to file his federal habeas petition. It took him three and a half years from finality to file his first State court petition. The District Court, after providing Petitioner an opportunity to respond to the initial findings of untimeliness in his first federal petition, dismissed the petition as time-barred, finding ultimately that Petitioner had not carried his burden, and rightfully his burden, of establishing that he is entitled to sufficient tolling or that sufficient tolling exists in order to render the petition timely. This wasn't a simple rule for dismissal where Petitioner wasn't provided an opportunity to respond. In this case, the District Court issued an order to show cause why the petition should not be dismissed as untimely, and he filed a response and attached several additional medical records to that response. So despite opposing counsel's characterization of the District Court's dismissal of the petition in this case, Petitioner was provided with an opportunity to respond, and he did, in fact, take that opportunity. The District Court correctly dismissed the petition as untimely. Petitioner argued, both in the District Court and here on appeal, that mental illnesses prevented him from filing a timely federal petition. However, even if we were to give Petitioner the benefit of the doubt of those first three and a half years before he filed his first State habeas petition, the statute of limitations still expired multiple times over the following five years. During those years, Petitioner filed nine State habeas or State petitions challenging his convictions in this case. That's nine distinct opportunities in which Petitioner could have filed a federal petition, nine distinct periods when he was aware of his need to file, when he could have and did, in fact, obtain assistance to file those State petitions. Ginsburg. But to repeat what I was asking before, I just reread what the District Court said about the first three years, and it makes not a whole lot of sense, because he basically is saying that it doesn't count because there was nothing pending, and he just doesn't seem to understand what Equipotola is about, and he also says that the record shows that his medical, his mental system was getting better, and that doesn't seem to be accurate past a certain point. So assuming that that's no good, that's all he decided, and he hasn't decided anything else. So why should we be deciding? Because the record that was before the District Court is sufficient for this Court in order respond to things real quick. Kagan. Do you think there are any factual issues involved in any of that? First of all, the District Court didn't have most of the record, right? Well, the Petitioner did attach some State court records to his petition. Right. But he didn't have the District Court could not have looked at that and seen that from 2003 to 2008, whatever, that there were pending things in State court a lot of the time. No. He did not have those physical petitions before him, but he did not need to have them. His findings within the first three years, I understand that we're assuming for the sake of this argument that doesn't count, but the reasons that this Court can affirm the District Court's decision don't have to be based on the same rationale. You don't have to adopt the District Court's reasoning in order to affirm it. I understand that, but to be dealing with material that was not even before the District Court seems like a strange thing to be doing. Well, granted, it's not the ideal situation for this Court to have to deal with, but again, the District Court's finding of untimeliness, perhaps the reasoning may have not been 100% on point, but it was correct nonetheless, especially in light of the additional petitions that were provided. Had those petitions been provided to the District Court and had Respondent been provided an opportunity to basically lay out the tolling situation as it's done before this Court, the District Court would have come to the same conclusions that Respondent has provided or that Respondent has forwarded in its brief and that this Court can very well adopt, even if the District Court didn't reach it. Is there not factual information with regard to the post-2003 period as to when he was mentally ill and in the gap periods, for example, that would have to be explored that hasn't been explored? Well, Petitioner did provide medical records for that period. The medical records that he did provide belie his claims that he was so mentally impaired that he could not assist in the preparation of the petition. Is that not a fact-finding that we ought not to be making? Well, I don't think it's necessary based on the record. Based on the medical records that he did provide, it's unnecessary. Is there more factual development that could have been done? I can't say without a doubt that no, there isn't. Surely there very well may be, but my point is that there need not be based on the records that were provided to the District Court. And those records demonstrate, the medical records that Petitioner provided, demonstrate that while he did suffer from various mental illnesses, infirmities, impairments, what have you, he was functional. He was aware. He was oriented. At one point, he provided records indicating that he was resisting transfer from the state prison that he was at because he was, in fact, working in the law library several hours a day with assistance in preparation for an appeal of his conviction. Is there any indication that the District Judge looked at or studied the medical records and made any determination in that area? Well, from the District Court, from the report and recommendation, you mean the District Court or the Magistrate Judge? The District Court. The District Court's order just adopted the Magistrate Judge's findings. And did the magistrate indicate that he looked at the medical records? In his report and recommendation, he did mention that he did review, you know, the review of the medical records demonstrated that Petitioner was faring well on his medication and that the illness or whatever the condition he had did not seem to deteriorate over the period of time in which Petitioner was claiming equitable tolling. But didn't he look only at 98 and 99? I don't. I can't tell you. I mean, just... Well, didn't he report only about 98 and 99? I would agree with that. I'm not saying he didn't consider... He wasn't looking at the relevant time period because he didn't understand what he was supposed to be looking at. Well, but I can't speak for the Magistrate Judge as far as what he considered and what he didn't. What we have is what he wrote about in the report and recommendation. But my point is that even taking just what was before the District Court or the Magistrate Judge in doing his report and recommendation, there was sufficient evidence there that Petitioner can't demonstrate any entitlement to equitable tolling, not only for the three and a half years, putting aside what the Magistrate Judge, you know, wrote about those three and a half years. He can't show that he had suffered from a mental illness so severe that he was deficient. The medical records that he lodged during that first three and a half years show that he was stable. There's nothing in those records that indicate a deterioration in his condition or that he was having any kind of adverse medical reaction. And that is sufficient... Is there anything in the Magistrate's report and recommendation to substantiate what you just said, that there's nothing in those records to establish that he wasn't competent to meet the deadlines? The Magistrate Judge, his... I believe his point was that there was nothing... That's what he said. Yeah. I don't think he really looked at them. There's no question this man was in very bad mental shape some of the time. Some of the time, perhaps. I can't tell you what... How do we evaluate whether that was a time when he was entitled to have a delay or not? How do we do that? It's... You look at the timeline that I set forth in Apelli's brief. You can look at the records that were provided to the district court and magistrate judge. I guess what I'm asking is, did anybody really look at those? Your Honor, I can only presume that they did.  But why would you presume that he did when the magistrate judge said that he's not he said he's not he looked at the period from 98 to 99. He said he's not entitled to equitable tolling between November 99 and July 2000 based on mental illness because there was no case pending. And then he says he can't get equitable tolling from then to February 2003 because the limitations period had already expired by that time. So we know he didn't look at it because he said it wasn't relevant to him. Let me clarify one thing, Your Honor. I was responding to Judge Panner, and within that three-year period, I didn't realize we were going beyond 2003. No, I was only going to 2003. So... So 2003. The magistrate judge said from 2000 to 2003, he can't get equitable tolling because the limitations period had already expired by that time. That's what he said. That is what he said. And I can't tell... Therefore, he didn't consider whether he was mentally ill during that period. And the next sentence is, in any event, he filed a slew of State petitions, so he accomplished these things. But he didn't say anything about the mental health situation during that time period because it obviously wasn't relevant to his theory. Well, I don't think it's fair to say that the judge didn't consider that. I think that he may have considered it, may have rejected it based on the more straightforward theory that the statute of limitations had already expired. I'm not going to argue, and I'm not going to agree, that the magistrate judge didn't consider all of the records that were provided by Petitioner, but perhaps... So we shouldn't believe him when he says why he decided something. I'm sorry? He said why he decided it, and we should think that he really decided for a different  reason. No, I'm not saying that at all. The magistrate judge did what he did in this case. We're stuck with what the magistrate judge did as far as the reasoning that he gave. But again, I go back to the fact that this court can affirm on any reasoning notwithstanding what the magistrate judge's reasoning was, whether you agree with it or not. What we have provided, what Respondent has provided in this case, is argument and records that demonstrate that even notwithstanding that three-and-a-half years, even assuming that Petitioner gets those three-and-a-half years of equitable tolling, he's still going to lose because he unreasonably delayed between his state court filings. He pursued three rounds of state court filings, nine state court petitions, during which any of those times, he could have timely filed or filed a federal petition, and he chose not to, unless there are further questions. Thank you. Thank you. I think it's clear from this Court's precedent and also what the Supreme Court has said that an equitable tolling determination is a very fact-intensive determination. It's a case-by-case analysis, and it's clear that the record here is not adequate for that kind of determination. As the panel has indicated, the district court clearly believed that it wasn't necessary to look at any time period after 2003 because the statute of limitations had already expired. So the district court wasn't even considering equitable tolling or Mr. Dent's mental state. At this point, Mr. Dent doesn't have the ultimate burden, and with respect to the standards set forth in Bills v. Clark, he needs to show that his mental impairment was so severe that he's unable to rationally or factually to personally understand the need to timely file, or that his mental state rendered him personally unable to prepare a habeas petition and effectuate its filing. So that cannot be determined from this record, and we would request that the case is remanded to the district court and that the district court look at the entirety of his medical records. There are several years of medical records that are just completely missing. I believe it's at least two years from November 2000 to July 2003. There's gaps from July 2003 to August 2004, from 2006 to 2007, and then another year from 2007 to 2008. And the district court should also be directed to consider Mr. Dent's developmental disabilities, which he never addressed. Is Mr. Dent now capable of presenting these issues competently to the district court? Well, he claims in all of his state court filings, he attaches declarations stating that a writ writer has prepared these for him, and he's not able to do it. But I'm talking about if we remand this to the district court, how is he going to present this issue competently? Oh, I would request. I mean, he would need counsel for the evidence you're hearing, definitely. Thank you. The case just argued will be submitted.
judges: Panner, Reinhardt, Berzon